UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No.7:00-CV-55-F1

| | |
|---|---|
| SHERRI WRIGHT BUFFKIN )<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE SMITHFIELD PACKING )<br>COMPANY, INC. and JERE NULL, )<br>Defendants. ) | O R D E R |

This matter is before the court on motion of defendants, Smithfield Packing Company, Inc., ("Smithfield") and Jere Null ("Null") for summary judgment. The plaintiff, Sherri Wright Buffkin ("Ms. Buffkin") has responded in opposition thereto and Smithfield has filed a reply. The matter is ripe for disposition.

Recitation of the lurid details underlying this lawsuit are unnecessary to a disposition of Smithfield's motion. Suffice it to say that Ms. Buffkin, who had worked her way up to a relatively high-level management position with Smithfield, engaged in unprofessional behavior involving another management employee, defendant Null, who thereafter romantically pursued her for years. Ms. Buffkin contends that Null's amorous conduct amounted to unlawful sexual harassment for which Smithfield is liable under

federal anti-discrimination law. She also contends that Smithfield fired her in violation of her right to be free from unlawful employment discrimination[1]

Five months after she was fired, Ms. Buffkin wrote to the Equal Employment Opportunity Commission ("EEOC") on February 22, 1999, stating that she intended to file a charge of discrimination against Smithfield, and seeking advice from that agency. By letter dated March 3, 1999, the EEOC responded. The full text of the EEOC's letter is as follows:

> Enclosed is a <u>questionnaire</u> for your completion. When the completed forms have been received by this office, an Investigator will contact you to arrange for and interview. A charge of employment discrimination must be filed within the time limits imposed by law, generally within 180 days of the alleged discrimination.
>
> If we have not heard from you within thirty days, we will assume that you did not intend to file a Charge of Discrimination with this office. If you wish to discuss this matter further, please contact this office at . . . .
>
> **Please return within ten (10) days.**

Exhibit 11 to Plaintiff's Memorandum in Opposition to Motion for Summary Judgment (emphasis in original). Enclosed was a document bearing the heading "EEOC RALEIGH AREA OFFICE <u>Precharge Questionnaire</u>." Exhibit 12 to Plaintiff's Memorandum.

Ms. Buffkin did not return the questionnaire within ten days as directed. The EEOC received Ms. Buffkin's completed Precharge Questionnaire on March 30, 1999. By letter dated April 2, 1999, EEOC Senior Investigator Ola Wiggins advised Ms. Buffkin

---

[1] It is uncontested that Smithfield's Plant Manager, Larry Johnson, fired Ms. Buffkin on September 23, 1998. It is Smithfield's position that Ms. Buffkin was terminated because of her involvement in a series of incidents unrelated to her relationship with Null that had resulted in Mr. Johnson's losing trust in her.

2

that the statute of limitations on Ms. Buffkin's discrimination claims had lapsed by the time the completed Precharge Questionnaire had reached the EEOC. Twenty days thereafter, on April 29, 1999, Ms. Buffkin wrote Ms. Wiggins requesting that the EEOC reconsider its position and reopen its investigation of her claim. Ms. Buffkin noted that her February 22, 1999, letter was "well within" the 180-day limitations period. On June 1, 1999, Ms. Buffkin filed a formal, sworn Charge of Discrimination with the EEOC. By letter dated September 29, 1999, EEOC Investigator Patricia Miller, referencing "Charge No. 141990464," notified Ms. Buffkin that she had been assigned to investigate Ms. Buffkin's allegations. Smithfield responded to Ms. Buffkin's Charge by letter dated November 2, 1999. Exhibit 13 (Sealed) to Defendant's Memorandum in Support of Summary Judgment.

Ms. Buffkin filed her Complaint in this court on March 22, 2000. Therein, she alleged the following claims for relief: (I) Title VII: Hostile Environment and *Quid Pro Quo* Sexual Harassment and Discharge; (II) Wrongful Discharge in Violation of Public Policy; (III) Intentional Infliction of Emotional Distress; and (IV) Tortious Interference with Contract. The Title VII claim is alleged as against Smithfield only; the tortious interference claim is alleged as against Null only; Ms. Buffkin voluntarily dismissed the wrongful discharge claim as against Null. Ms. Buffkin invoked federal subject matter jurisdiction based on her Title VII claim; she brought the state law tort claims pursuant to this court's supplementary jurisdiction.

An individual who claims to have been aggrieved under Title VII may pursue a civil remedy according to the provisions of 42 U.S.C. § 2000e-5. That statute requires, however, that a claimant first exhaust her administrative remedies before filing suit in federal court. Exhaustion of administrative remedies requires fulfilling two conditions precedent to filing a private party suit: First, the claimant must file a Charge of Discrimination with the EEOC within 180 days of the last alleged act of discrimination. The Charge must be "in writing under oath or affirmation and shall contain such information [set forth in the statute] and be in such form as the Commission requires." *Id.* at § 2000e-5(b). Second, the claimant must receive from the EEOC, or be entitled to receive, a right-to-sue letter. *See id.* at § 2000e-5(f); *Perdue v. Roy Stone Transfer Corp.*, 690 F.2d 1091, 1093 (4th Cir. 1982). The EEOC is supposed to issue the right-to-sue letter within 180 days from the date on which the Charge is filed. *See id.*[2] During that 180-day period, the EEOC is expected to conduct conciliation efforts. Within 90 days of receipt of the right-to-sue letter, the claimant may institute a private civil action against the employer pursuant to § 2000e-5(f).

Ms. Buffkin alleges in her Complaint at ¶ 42 that she "satisfied all procedural and administrative requirements of Title VII . . ., by filing a timely charge of discrimination with the [EEOC], receiving a Right to Sue letter and filing this Complaint within 90 days

---

[2] The purpose of the requirement that a Title VII plaintiff receive a "right-to-sue" letter before instituting civil proceedings is to permit the parties to correct discrimination through administrative conciliation and persuasion if possible, rather than by formal court action. *See, e.g., Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398 (3d Cir. 1976), *cert. denied,* 429 U.S. 1041 (1977).

4

of receiving her Right to Sue letter." However, the Charge of Discrimination was filed more than 180 days after the alleged date of discrimination, and the court has been unable to locate in the record either a copy of the "right-to-sue" letter or reference to the date on which it was received.

Among the legal bases for Smithfield's Motion for Summary Judgment is that Ms. Buffkin failed to file a Charge that complied with the statutory requirements within the period set forth in § 2000e-5e ("a charge . . . *shall* be filed within one hundred and eighty days after the alleged unlawful employment practice occurred") (emphasis added). Ms. Buffkin's June 1, 1999, Charge was filed more than 250 days after the last alleged discriminatory act.[3]

Ms. Buffkin argues that her February 22, 1999 letter to the EEOC, coupled with her June 1, 1999 verified Charge, suffice to satisfy the 180-day filing requirement. Ms. Buffkin relies on EEOC regulation, 29 C.F.R. § 1601.12(b), for the proposition that a charging party's unverified statement submitted to the EEOC within the 180-day period is sufficient so long as a Charge, verified under oath or affirmation, is filed later. Ms. Buffkin cites *Tinsley v. First Union National Bank*, 155 F.3d 435, 438-39 (4th Cir. 1998), and *Balazs v. Liebenthal*, 32 F.3d 151, 157 (4th Cir. 1994).

---

[3] In fact, on the date Ms. Buffkin first made contact with the EEOC, about 150 of her 180 days already had expired. Therefore, as of the February 22, 1999 initial inquiry letter, Ms. Buffkin had 30 days left within which to file a timely Charge. Had she returned the Precharge Questionnaire within ten days as directed, she still would have had at least a week left.

5

The EEOC regulation provides:

> [a] charge may be amended to cure technical defects or omissions, including the failure to verify the charge, or to clarify or amplify allegations made therein. Such amendments . . . will relate back to the date the charge was first received.

29 C.F.R. § 1601.12(b). The formal, verified Charge, she argues, relates back to the date of her initial, unverified letter. Therefore, Ms. Buffkin's position is that her Charge was timely filed on February 22, 1999, the date of she first contacted the EEOC.

Anticipating Ms. Buffkin's argument, Smithfield cites *Edelman v. Lynchburg College*, 228 F.3d 503 (4th Cir. 2000), *petition for cert. filed*, No. 00-1072, (U.S. Jan. 2, 2001) in which a panel of the Fourth Circuit Court of Appeals rejected an identical argument after a lengthy and thoughtful analysis.[4] That court recognized the conflict between the mandatory language of the statute and the EEOC's regulation.[5] At bottom, however, the court based its conclusion on the firmly established rule of construction that an administrative agency may not, by promulgation of regulations, in effect overrule the plain language of a statute enacted by Congress. *See id.* at 508 (citing *FEC v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 32 (1981)

---

[4] Judge Luttig filed a concurring opinion.

[5] The court noted that "[t]his case presents an issue of first impression in this circuit: whether 29 U.S.C. § 1601.12(b), a regulation promulgated by the . . . EEOC, conflicts with the statutory requirements of Title VII . . ., to the extent that the regulation permits a charge of discrimination to be verified after the expiration of the applicable limitations period. . . . Because we conclude that, so applied, the EEOC regulation is contrary to the plain language of the statute, we affirm the dismissal of Edelman's action on the grounds that he failed to file a timely charge of discrimination." *Edelman*, 228 F.3d at 505.

6

(" '[c]ourts must reject administrative constructions of the statute, whether reached by adjudication or by rule-making, that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement.' ")). Thus, the appellate court concluded that because Edelman's letter to the EEOC mailed within the 180-day period was not sworn, it did not comply with the statutory requirement that a charge "shall be in writing under oath or affirmation." *Id.* at 507 (quoting 42 U.S.C. § 2000e-5(b)). The court declined to give effect to the EEOC regulation, because the court determined that it impermissibly conflicts with the plain language of the statute. *Accord Jackson v. James River Iron, Inc.*, No. 01-1107, 2001WL 391752, slip op. at *1 (4th Cir. April 18, 2001).

Ms. Buffkin contends that *Edelman* is not good law or should not apply to her case because Edelman has filed a petition for writ of certiorari with the United States Supreme Court, and/or because other panels of the Fourth Circuit Court of Appeals have reached different conclusions. For example, Ms. Buffkin draws the court's attention to *Tinsley, Balazs,* and *Whiting v. Ski's Auto World Paint and Body Shop, Inc.*, No. 98-2623, 1999 WL 753997 (Sept. 23, 1999) (per curiam) (UP). All three of those cases predate *Edelman*, and *Edelman* specifically distinguished *Tinsley* and *Balazs*. *Whiting* is an unpublished, per curiam opinion.

This court is bound to follow *Edelman,* because, unless and until that case is reversed by the Supreme Court, it is the last word from the Fourth Circuit Court of Appeals as to the efficacy of the EEOC regulation to trump the mandatory language of

7

the statute. Consequently, because the evidence is uncontroverted that Ms. Buffkin did not file a timely Charge that conforms with the requirements set forth by Congress in § 2000e-5(b), she has not exhausted her administrative remedies and, therefore, is not entitled to pursue her claims in this court unless the court finds that the facts of this case support equitable tolling of the limitations period.

Correctly noting that filing a timely EEOC Charge is not a jurisdictional prerequisite to maintaining a Title VII lawsuit in federal court, Ms. Buffkin suggests that the limitations period in her case should be equitably tolled. *See Zipes v. TransWorld Airlines, Inc.*, 455 U.S. 385, 393 (1982). Citing *Vance v. Whirlpool Corp.*, 716 F.2d 1010, 1013 (4th Cir. 1983) (employer's failure to post notice of employees' ADEA rights), *cert. denied*, 465 U.S. 1102 (1984), and *Lane v. Wal-Mart Stores East, Inc.*, 69 F. Supp. 2d 749, 754 (D. Md. 1999) (reliance on EEOC employee's direction to be patient and wait for EEOC to contact her), Ms. Buffkin explains that equitable tolling is appropriate where the charging party is excusably ignorant of the requirements for filing a charge or relies on misleading representations from the EEOC. Whether or not a claimant was represented by counsel may be a pertinent factor. *See Edelman*, 228 F.3d at 511 (noting that Edelman was represented by counsel during the critical time period and even mentioned the lawyer's name in his initial letter to the EEOC).

Ms. Buffkin emphasizes that she, unlike Mr. Edelman, was unrepresented in her quest to initiate a civil action against Smithfield and Null for alleged discrimination

against her. She has supplied the affidavit of the attorney she retained in January, 1999, to represent her:

> in an unemployment compensation claim, for the defense of any civil claim by Smithfield Packing Company against Ms. Buffkin arising out of the termination of Ms. Buffkin's employment, any claim by Smithfield that Ms. Buffkin had violated any rights of Smithfield, and for a legal evaluation of Ms. Buffkin's termination of employment. Any advice or representation regarding possible claims arising under [Title VII] was expressly excluded from my attorney client agreement and relationship with Ms. Buffkin. *I did advise Ms. Buffkin as to her statute of limitations regarding filing EEOC charges* but made it expressly clear that under our attorney client agreement, that I would not be representing or advising her regarding EEOC matters, or handling any EEOC charge or related EEOC filings for her, and that any EEOC matters would have to be handled on her own.

Affidavit of J. Michael McGuinness, Exhibit to Plaintiff's Memorandum in Opposition to Motion for Summary Judgment (emphasis added). Nevertheless, McGuinness's office provided "typing assistance" to Ms. Buffkin on at least two occasions; the February 22, 1999 letter and the April 29, 1999 follow-up letter were "prepared on my word processing equipment." *Id.* Additionally, Ms. Buffkin argued in her Memorandum filed in Opposition to the instant motion that "[a]nother basis for considering Ms. Buffkin's charge timely is that it was actually submitted on her behalf by J. Michael McGuinness, the attorney handling her unemployment compensation hearing." Plaintiff's Memorandum at 14-15.

Whether or not Ms. Buffkin's attorney-client relationship with Mr. McGuinness formally included EEOC matters, Ms. Buffkin's own evidence demonstrates that Mr. McGuinness advised her of applicable statutes of limitations and provided hands-on

9

assistance with the preparation and filing of the various documents she submitted to the EEOC. Ms. Buffkin's position that she was proceeding without assistance of counsel is, at best, a neutral factor in the court's consideration of the propriety of equitable tolling.

In addressing the tolling issue, the *Edelman* panel rejected Edelman's attempt to attribute the untimeliness of his Charge to the EEOC's significant processing delays. However, the court observed that Edelman had "waited more than five months after the alleged discrimination before even contacting the agency." *Edelman*, 228 F.3d at 511. Similarly, Ms. Buffkin waited one day shy of five months before writing her February 22, 1999 letter to the EEOC. Furthermore, although Ms. Buffkin insists that she "took exactly the steps that she was told to take . . . and complied with all of the instructions she received from the EEOC," the record is plain that she did not do so.[6]

In its response to her February 22 letter, the EEOC sent Ms. Buffkin a Precharge Questionnaire for her completion. "When the completed forms have been received by this office, an Investigator will contact you to arrange for and interview. A charge of employment discrimination must be filed within the time limits imposed by law, generally within 180 days of the alleged discrimination. . . . **Please return within ten (10) days.**" March 3, 1999 EEOC letter (emphasis in original). Ms. Buffkin did not return the completed questionnaire within 10 days. Instead, she explains that she attempted repeatedly to contact Mr. McGuinness for advice on filling out the

---

[6] Ms. Buffkin implies that she was misled by the EEOC, but she has not produced any evidence to support that inference.

questionnaire,[7] and when she could not reach him, she completed the questionnaire by herself. *See* March 12, 2001 Affidavit of Sherri Buffkin at ¶ 20. Ms. Buffkin assumed that she *really* had 30 days within which to return the questionnaire because, although the letter advised her of the 180-day limitations period and directed her to return her questionnaire within 10 days, it also stated that if the agency did not hear from her in 30 days, it would assume she had decided against pursuing the claim. *See* March 3, 1999 EEOC letter. Ms. Buffkin acknowledges that she was aware of the 180-day deadline based on the information Mr. McGuinness gave her, Buffkin Affidavit at ¶ 23, but she argues that because the EEOC did not specifically tell her that she was required to file a sworn affidavit within that period, her failure to do so should be excused, and the limitations period tolled in her case. Finally, Ms. Buffkin contends that because the EEOC relented in the end and assigned a Charge number to her case[8] that this court should do the same and permit her civil case to proceed.

The undersigned has carefully considered Ms. Buffkin's evidence and arguments detailing her diligence in pursuing her claims against her former employer, but

---

[7] The reasonableness of this course of action is questionable in light of Mr. McGuinness's averment that he expressly advised her that their attorney-client relationship did not include EEOC matters.

[8] The court notes again that, although Ms. Buffkin alleged in her Complaint that she received a right-to-sue letter, the court has been unable to locate a copy of it in the file. If she did not receive a right-to-sue letter, then even if her Charge had been timely filed, she would not have exhausted her administrative claims unless she could demonstrate that she was entitled to such a letter. *See, e.g., Perdue*, 690 F.2d at 1093, 1094, n.7; *Henderson v. Anne Arundel Co. Bd. of Educ.*, 54 F. Supp. 2d 481, 482 (D. Md. 1998).

11

concludes that the facts of this case do not support equitable tolling of the limitations period. The court finds the material facts of this case essentially indistinguishable from those upon which the Fourth Circuit decided *Edelman*. The undersigned agrees with the *Edelman* court in its belief that:

> this case is best summed up in the words of the Supreme Court:
>
> "Procedural requirements established by Congress for gaining
> access to the federal courts are not to be disregarded by
> Courts out of a vague sympathy for particular litigants . . .
> [I]n the long run, experience teaches that strict adherence
> to the procedural requirements specified by the legislature
> is the best guarantee of evenhanded administration of the law."

*Edelman*, 228 F.3d at 511-12 (quoting *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984)).

Accordingly, Smithfield's Motion for Summary Judgment as to Ms. Buffkin's Title VII claims is ALLOWED and Ms. Buffkin's Title VII claims (First Claim for Relief) are DISMISSED for failure to exhaust administrative remedies.

Smithfield entreats the court to exercise its discretion to retain jurisdiction over the supplemental state law claims even if the federal claim is dismissed. *See* 28 U.S.C. § 1367; *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). Factors bearing on the court's decision include convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and judicial economy. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, n.7 (1988). This court perceives that only the considerations of convenience and judicial economy could be served by this court's retaining jurisdiction. The Title VII claim having been dismissed for failure to exhaust

12

administrative remedies, there remain no underlying issues of federal policy, and comity best would be served by permitting the state courts to resolve the state law claims. The court perceives the fairness factor to be neutral. Additionally, this court has not reached the merits of Ms. Buffkin's federal claims, so dismissal of the state claims would not risk a duplication of effort or the likelihood of inconsistent judgments. Accordingly, this court declines to retain jurisdiction to entertain Ms. Buffkin's supplemental state law claims. *See* 28 U.S.C. § 1367.

For all the foregoing reasons, Smithfield's Motion for Summary Judgment as to Ms. Buffkin's Title VII claims is ALLOWED, and her First Claim for Relief is DISMISSED without prejudice, as Ms. Buffkin has failed to exhaust her administrative remedies, and equitable tolling is not appropriate on the facts of this case. In its discretion pursuant to 28 U.S.C. § 1367, the court declines to exercise supplementary jurisdiction over Ms. Buffkin's state law claims against the defendants after the federal claims have been dismissed. Therefore, Ms. Buffkin's state tort claims of wrongful discharge in violation of North Carolina public policy, intentional infliction of emotional distress, and tortious interference with contract hereby are DISMISSED without prejudice for her to litigate them, if at all, in state court.

SO ORDERED.

This the 11th day of May, 2001.

JAMES C. FOX
Senior United States District Judge